IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br><br>JOYA M. KINNEY,<br><br>Defendant. | 8:25–CR–117<br><br><br><br>**DEFENDANT'S BRIEF IN SUPPORT OF MOTION FOR DOWNWARD VARIANCE (PROBATION)** |

## I.   INTRODUCTION

The Defendant, Joya M. Kinney, by and through her undersigned counsel respectfully submits this Brief in Support of her Motion for a Downward Variance and requests that this Honorable Court sentence her to a term of probation. Although all factors set forth in 18 U.S.C. § 3553(a) are deserving of weight in this Court's analysis, the Defendant would emphasize the following: (1) Mrs. Kinney is a true zero-point offender with no criminal history whatsoever; (2) the sole offense for which Mrs. Kinney has been convicted is non-violent in nature and there is no need for a carceral sentence to protect the public from her; (3) Mrs. Kinney has demonstrated remorse and acceptance of responsibility from the very onset of this case by confessing, formally waiving the right to invoke the statute of limitations, making a pre-payment of $80,000.00 toward restitution, and expediently resolving this case through a guilty plea to an Information.

1

## II. BACKGROUND

Mrs. Kinney comes before this Court as a 45-year-old woman, with a loving husband, Kyle, and four daughters aged 20, 16, 14, and 12. As the Revised Presentence Investigation Report (RPSR) explains in greater detail, this case came about after Mrs. Kinney fraudulently converted approximately $452,176 from her former employer, Cornerstone Christian School. Apart from this episode in her life, Mrs. Kinney has never been in any criminal trouble whatsoever. And if there has been one, consistent throughline in this case, it has been Mrs. Kinney's resolve to confess her wrongdoing, take responsibility for her actions, and begin paying back that which she owes. The following timeline is illustrative of this:

- On February 4, 2025, the United States Attorney's Office for the District of Nebraska sent Mrs. Kinney a target letter informing her that she was the subject of a federal investigation. (Attachment 1).

- On February 20, 2025, Mrs. Kinney signed a Statute of Limitations tolling agreement waiving her right to invoke the statute of limitations as a defense (RPSR at ¶1 and Attachment 2);

- On May 6, 2025, Mrs. Kinney signed a plea agreement;

- On May 29, 2025, Mrs. Kinney signed a waiver of Indictment;

- On June 17, 2025, the Government filed a one-count Information, and Mrs. Kinney pleaded guilty to that sole count on the same day;

- On July 17, 2025, Mrs. Kinney deposited the sum of $80,000.00 with the Clerk of the United States District Court to go toward the anticipated amount of restitution that would be ordered.

- On August 18, 2025, the RPSR was provided to Counsel. The RPSR calculated an additional $43,476 in restitution on top of the $452,176.13 she already agreed to pay. Mrs. Kinney has not raised any objection to this new, additional amount in restitution nor does she have any other objections to the RPSR.

In sum, from the time the Target Letter was drafted by the Government on February 4, 2025, to the date she will be sentenced, less than eight months will have passed. This extraordinarily expeditious pace for a federal criminal case is a testament to Mrs. Kinney's acceptance of responsibility and commitment to doing the right thing going forward.

### III.     APPLICATION OF THE § 3553(a) FACTORS

No one, least of all Mrs. Kinney, disputes that her offense of conviction was both morally and legally wrong. As reflected in the RPSR, when Mrs. Kinney was first confronted about this matter by her employer, Mrs. Kinney immediately came clean and said, "I have sinned against you and the school." (RPSR at ¶24). Nor does anyone dispute that her actions are worthy of punishment. The only question before this Court is one of degree. That is where the factors set forth in 18 U.S.C. § 3553(a) come into play. As discussed below, the undersigned respectfully submits that when these factors are collectively considered and afforded their appropriate weight, a sentence of probation is sufficient but not greater than necessary to accomplish the goals of federal sentencing.

1. ***The Nature and Circumstances of the Offense and the History and Characteristics of Mrs. Kinney*** **– 18 U.S.C. § 3553(a)(1)**

    a. <u>The Nature and Circumstances of the Offense</u>

The nature and circumstances of this offense are fairly straightforward and undisputed. Mrs. Kinney was employed by Cornerstone Christian School as a bookkeeper, and during this time she defrauded the school by improperly converting funds through various means. This was not a sophisticated scheme by any measure,

but it was wrong and blameworthy nonetheless. Indeed, Mrs. Kinney readily admits that as a bookkeeper she held a position of trust, and abused it—that is why she has raised no objection to the 2-point enhancement she received in paragraph 31 of the RPSR pursuant to U.S.S.G. § 3B1.3.

To be sure, Mrs. Kinney could have objected to this enhancement as a matter of form and held the Government to its burden of proving it up. But, true to the character she has demonstrated from the onset of this criminal case, she instead chose to own her wrongdoing and admit to it. This is the same tact she took when she received a target letter from the DOJ informing her of these criminal charges, when she waived her right to invoke the statute of limitations, when she waived her Fifth Amendment right to have a Grand Jury return an Indictment, when she entered into a plea agreement in advance of the filing of the Information, and when she pleaded guilty to the sole count of that Information on the same day that it was filed. The consistent theme of this entire case has been Mrs. Kinney's acceptance of responsibility, lack of excuse making, willingness to remedy the harm that she caused, and commitment to doing the right thing going forward—something that is particularly apparent from the fact she refinanced her house to make an $80,000.00 good-faith, pre-payment toward restitution to the Clerk of this Court. Indeed, as recently as this past July, Mrs. Kinney assisted representatives for the victim as they endeavored to gain access to their QuickBooks account when they asked if she would be willing to help. (Attachment 3).

b. <u>The History and Characteristics of Mrs. Kinney</u>

While the following considerations by no means serve as legal excuses or defenses for her criminal actions, Mrs. Kinney's personal background is chock-full of mitigating circumstances that are worthy of this Court's consideration in its assessment of her history and characteristics pursuant to 18 U.S.C. § 3553(a)(1). As reflected in Paragraphs 60, 61, and 71, of the RPSR, Mrs. Kinney was repeatedly sexually abused by a neighbor when Mrs. Kinney was between the ages of four and ten. Mrs. Kinney suffers from bipolar disorder, type II, attention-deficit/hyperactivity disorder (ADHD), and post-traumatic stress disorder (PTSD). *See* RPSR at ¶¶70, 73. Her mental health struggles and conditions have been confirmed by a professional medical provider, and a copy of her mental health evaluation was provided to both Counsel for the Government and the United States Probation Office as part of the Presentence Investigation process. (Attachment 4).

As then-Associate Justice Rehnquist once observed, "It requires no citation of authority to assert that children who are abused in their youth generally face extraordinary problems developing into responsible, productive citizens." *Santosky v. Kramer*, 455 U.S. 745, 789 (1982) (Rehnquist, J., dissenting). Yet, despite the trauma she has experienced and mental health struggles she continues to work through, Mrs. Kinney has shown that she is capable of maintaining gainful employment—even after this matter came to light. *See* RPSR at ¶79 (noting that one of Defendant's multiple, current employers, Barnett Professional Services, L.L.C., says "the defendant has a great attitude" and "is willing to switch gears or dig deeper to figure out an issue.").

But perhaps even more importantly, she continues to positively contribute to society as an exceptional mother to four daughters, and as devoted wife to her husband of 24 years. By all accounts, and in spite of her own internal struggles she has dealt with as a product of severe childhood trauma, Mrs. Kinney is an absolutely fantastic mother. A representative sampling of testaments to the stewardship of her children is included below:

- "As a parent myself, I believe that daughters do not grow up exhibiting these characteristics without a loving mother to be their example. Joya is absolutely that example!" (Character Letter of Ruth Trimble – Attachment 5).

- "For the last five years, I've had one or more of Joya's daughters in our youth group. Without exception, they have been kind, respectful and acted with integrity—qualities that I highlight because of their increasing rarity in young people." (Character Letter of Jonathan Meade – Attachment 5).

- "Joya is a devoted wife and a loving mother whose children reflect her values of kindness, responsibility, and resilience" (Character Letter of Rachael Foster – Attachment 5).

It is also worth considering what her family has to say. The following are relevant excerpts from letters that were written her husband and eldest daughter:

- "Almost two years ago, when this all came to light, long before the formal process of the last two years began, Joya and I, as a family, made a commitment to make things right, for no other reason than it is the right thing to do. We've spent the last two years, and will spend several more, rebuilding our marriage. We are committed to protecting our daughters, continuing to raise them to do "right" which means as a family making things right for those harmed materially or relationally. Joya has worked hard the last two years to become healthy spiritually and mentally. A lenient sentence allows Joya to continue that process. More so, it allows her to make progress on making things right with those she has hurt. That is all I can ask for." (Character Letter of Kyle Kinney – Attachment 5).

- "The last and most important reason is that my mom, Joya Kinney, taught me to love. She showed me what it meant to love through sacrifice. She showed me what it meant to love by being empathetic, to sit with someone in grief and hard times and to cry with them, as she has done with my three sisters and me many times. She taught me to love by being excited for someone when something amazing happens, as she encourages her friends and thanks God when he does something in their lives, even when she does not notice a change in hers. She taught me to love unconditionally, as she has loved me even when I have been unkind, impatient and hurtful towards her. She has loved me by being honest with me, even when it was difficult truths to hear, yet while being honest, she never stopped being gentle and kind. She has loved me so deeply in away only a mother can, and I will be eternally grateful to her." (Character Letter of Lorelai Kinney – Attachment 5).

To be sure, being a good mother—or even an exceptional one like Mrs. Kinney—does not excuse criminal conduct. But the foregoing is nevertheless critically relevant to this Court's consideration of 18 U.S.C. § 3553(a)(1) because it demonstrates that Mrs. Kinney has proven that she can overcome adversity—including trauma that no one should ever have to experience—and contribute positively to society in spite of her past. If given the opportunity for a probationary sentence, this Court should have little doubt that she will do the same here.

2. ***The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, To Promote Respect for the Law, and to Provide Just Punishment for the Offense; To Afford Adequate Deterrence to Criminal Conduct; To Protect the Public from Further Crimes of the Defendant; and To Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner – 18 U.S.C. § 3553(a)(2).***

The relevant factors set forth in 18 U.S.C. § 3553(a)(2) also weigh firmly in favor of a non-carceral, probationary sentence. The offense has been charged in United States Federal District Court: the weight of a federal conviction alone reflects its seriousness irrespective of the punishment that is imposed—particularly for

7

someone like Mrs. Kinney who has no criminal history in either State or Federal Court. This case has already received ample media attention that would deter anyone from engaging in like conduct. There can be little doubt that no matter the sentence this Court imposes, the seriousness of this conduct will have been amply communicated to both Mrs. Kinney and the public at large. Finally, the inherent nature of this crime is non-violent in nature and a simple background check by any workplace will suffice to protect the public from any risks that Mrs. Kinney may pose based on the nature of this fraud-based conviction. Incarceration is simply unnecessary to protect the public from her.

### 3. *The Kinds of Sentence Available – 18 U.S.C. § 3553(a)(3)*

As paragraph 99 of the Revised Presentence Investigation Report correctly notes, Defendant is statutorily eligible for a sentence of between one and five years of probation because the sole offense of conviction in this case is a Class C Felony. *See* 18 U.S.C. § 3561(c)(1). Because Mrs. Kinney is eligible for probation and "§3553(a)(3) directs the judge to consider sentences other than imprisonment[,]" *Gall v. United States*, 552 U.S. 38, 59 (2007), this factor weighs in favor of a probationary sentence.

### 4. *The Sentencing Range Established by the United States Sentencing Guidelines—18 U.S.C. § 3553(a)(4)*

Defendant respectfully submits that while 18 U.S.C. § 3553(a)(4) is entitled to consideration, it is not particularly informative one way or the other in this case. A "guidelines" sentence of incarceration in this case would be between 18 and 24 months. But, as discussed in detail below, the best available data set indicates that approximately 1/3 of similarly situated defendants receive probation in like cases.

8

### 5. *Pertinent Policy Statements from the Sentencing Commission—18 U.S.C. § 3553(a)(5)*

As noted above, Defendant is statutorily eligible for probation given that the sole offense of conviction in this case is a Class C felony. *See* 18 U.S.C. § 3561(c)(1). However, Defendant readily acknowledges that with a Total Offense Level of 15, the United States Sentencing Guidelines place her outside the eligibility window for a "guidelines sentence" of probation. She has therefore filed this Motion because, application of the § 3553(a) factors militate firmly in favor of probation. Indeed, the Commentary included within the Guidelines themselves recognize that non-carceral sentences are often appropriate for certain zero-point, non-violent offenders.[1] While that commentary focuses on those in Zones A and B of the Sentencing Table, the undersigned respectfully submits that the same basic rationale in favor of probation applies with equal force here when the § 3553(a) factors are applied to Mrs. Kinney.

Additionally, Mrs. Kinney is 45-years-old, and this is her first involvement with the criminal justice system. The Policy Statement set forth in U.S.S.G. § 5H1.1 specifically address age, and notes that "[t]he age-crime curve, one of the most consistent findings in criminology, demonstrates that criminal behavior tends to decrease with age." *See also* The Effects of Aging on Recidivism of Federal Offenders,

---

[1] *See* U.S.S.G. § 5C1.1, Application Note 10(A) ("If the defendant received an adjustment under § 4C1.1 (Adjustment for Certain Zero-Point Offenders) and the defendant's applicable guideline range is in Zone A or B of the Sentencing Table, a sentence other than a sentence of imprisonment, in accordance with subsection (b) or (c)(3), is generally appropriate."); *see also* 28 U.S.C. § 994(j) ("The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first time offender who has not been convicted of a crime of violence or an otherwise serious offense, and the general appropriateness of imposing a term of imprisonment on a person convicted of a crime of violence that results in serious bodily injury.").

9

United States Sentencing Commission (December 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders (last accessed August 21, 2025) ("Age exerted a strong influence on recidivism across all sentence length categories. Older offenders were less likely to recidivate after release than younger offenders who had served similar sentences, regardless of the length of sentence imposed."). This Court should have little reason to doubt that Mrs. Kinney's risk of recidivism is quite low. There is scant need to impose a period of incarceration to deter like conduct in the future.

### 6. *The Need to Avoid Unwarranted Sentencing Disparities—18 U.S.C. § 3553(a)(6)*

Available data from the United States Sentencing Commission's "Judiciary Sentencing INformation (JSIN)" platform reveals that "[d]uring the last five fiscal years (FY2020–2024), there were 498 defendants whose primary guideline was §2B1.1, with a Final Offense Level of 15 and a Criminal History Category of I, after excluding defendants who received a §5K1.1 substantial assistance departure.[2]" This same platform reports that during this period, 335 of these 498 defendants (*i.e.*, 67%) received a sentence of imprisonment in whole or in part.[3] And for those who did receive a sentence of imprisonment, "the average length of imprisonment was 13

---

[2] *See* https://jsin.ussc.gov/analytics/saw.dll?Dashboard&PortalPath=%2Fshared%2FJSIN%2F_portal%2FJSIN&page=Sentencing%20Table (last accessed August 19, 2025).

[3] *Id.*

months(s) and the median length of imprisonment imposed was 12 month(s).[4]" This data is insightful for several reasons.

First, it is perhaps the best available data that can be used to assess this particular § 3553(a) factor given the Eighth Circuit's insistence that "the statutory direction to avoid unwarranted sentence disparities . . . refers to *national* disparities[.]" *United States v. Baez*, 983 F.3d, 1029, 1044 (8th Cir. 2020) (emphasis in original); *see also United States v. McDaniel*, 59 F.4th 975, 983 (8th Cir. 2023) (Stras, J., dissenting) (describing the JSIN as a "Judiciary Sentencing Information tool, which aggregates data on offenders sentenced in the federal system").

Second, it shows that no matter whether one considers the "average" sentence or the "median" sentence, downward variances appear to be meted out with some degree of regularity. If the guideline range for these types of offenses calls for a sentence between 18 and 24 months, but the "average" carceral sentence actually imposed is 13 months (*i.e.*, a 27% reduction from the low end of the guidelines) and the median carceral sentence actually imposed is 12 months (*i.e.*, a 33% reduction from the low end of the guidelines), then this data tends to support that courts are varying downward when sentencing offenders who are similarly situated to Mrs. Kinney—and that does not even account for downward variances to probation.

Third, and most importantly, this data establishes that approximately 1/3 of the defendants who have the same primary guideline, same total offense level, and same criminal history category as Mrs. Kinney receive a sentence other than

---

[4] *Id.*

11

incarceration.[5] Thus, the JSIN data shows that it would hardly create an unwarranted sentencing disparity if this Court were to vary downward and sentence Mrs. Kinney to the same non-carceral type of sentence that a third of like-situated persons appear to have received within the past five fiscal years.

### 7. *The Need to Provide Restitution to Any Victims of the Offense—18 U.S.C. § 3553(a)(7)*

This factor also weighs in favor of a probationary sentence because sentencing Mrs. Kinney to probation will allow her to continue working and making money toward the restitution she will be ordered to pay. As the United States Department of Justice's own website candidly admits, in federal criminal cases where restitution is ordered "the chance of full recovery is very low" and "[w]hile defendants may make partial payments toward the full restitution owed, it is rare that defendants are able to fully pay the entire restitution amount owed.[6]" However, Mrs. Kinney has already demonstrated her commitment to paying back the victim in this case as evidenced by the $80,000.00 deposit she has already made to the Clerk of this Court in advance of sentencing.

Furthermore, and while not specifically set forth as a factor in 18 U.S.C. § 3553(a), it is also appropriate for this Court to consider the victim's input. On August 18, 2025, the undersigned received a victim impact statement, wherein the victim was asked if it had "any thoughts or suggestions regarding a sentence that the court

---

[5] *Id.*

[6] *See* https://www.justice.gov/criminal/criminal-vns/restitution-process (last visited August 19, 2025).

should impose[.]" The victim (ostensibly acting through a duly authorized representative), said: "The school would recommend a full repayment of monies taken[.]" The victim made no request for incarceration or otherwise suggested that probation would be inappropriate. In order for Defendant to continue making progress toward these restitution payments, the most logical means of doing so is to allow her to continue working while on probation rather than stymieing the victim's ability to recover from Mrs. Kinney's paltry prison wages.

## IV.    CONCLUSION

For the reasons set forth in this Brief, along with all other matters in the RPSR and record bearing on the Court's consideration of the § 3553(a) factors, the Defendant respectfully requests that this Honorable Court vary downward and impose a sentence of probation rather than incarceration.

    Very respectfully submitted,

    *s/Ryan S. Crnkovich*
    Ryan S. Crnkovich, NE Bar #25741
    Dornan, Howard, Breitkreutz, Dalquist
    & Klein, PC, LLO
    1403 Farnam Street, Suite 232
    Omaha, NE 68102
    (402) 884-7044
    (402) 884-7045 facsimile
    ryan@dltlawyers.com
    *Attorney for Defendant*

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on the 22nd day of August 2025 a true and correct copy of the foregoing pleading and was electronically filed with the Clerk of the United States Court for the District of Nebraska using the CM/ECF filing system which sent notification of such filing to the following recipients:

John E. Higgins, U.S. Attorney's Office- Omaha
Assistant U.S. Attorney
1620 Dodge Street, #1400
Omaha, NE 68102
John.higgins@usdoj.gov

                                          */s/ Ryan S. Crnkovich*
                                          Ryan S. Crnkovich, NE Bar #25741
                                          Attorney for Defendant